24-1943-cr
*United States v. Gomez*

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2024
No. 24-1943-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

STEVEN GOMEZ,
*Defendant,*

*ADAM GOMEZ*
*Defendant-Appellant.*

ARGUED: MAY 22, 2025
DECIDED: NOVEMBER 17, 2025

Before:     KEARSE, JACOBS, and LOHIER, *Circuit Judges*.

Defendant-Appellant, Adam Gomez, appeals the judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) entered following his guilty plea to receiving and possessing a firearm with an obliterated serial number.   On appeal, Gomez challenges the constitutionality of his statute of conviction, 18 U.S.C. § 922(k), as facially unconstitutional under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

We conclude that 18 U.S.C. § 922(k) is facially constitutional. Forbidding possession of a firearm with a removed, obliterated, or altered serial number does not infringe upon the right to bear arms because no person is thereby prevented from possessing any type of firearm, and because such a firearm is not a weapon in common use for lawful purposes. Moreover, Gomez asserts a facial challenge to § 922(k) but makes no attempt to show that it is unconstitutional as applied to anyone other than himself. Accordingly, we affirm the judgment of conviction.

**AFFIRMED**.

JAMES P. EGAN, Assistant Federal Public Defender, Syracuse, NY, *for Defendant-Appellant*.

RICHARD D. BELLISS, JOSHUA ROTHENBERG, Assistant United States Attorneys, for Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY, *for the United States of America*.

DENNIS JACOBS, *Circuit Judge*:

Defendant-Appellant, Adam Gomez, appeals the judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) entered following the denial of his motion to dismiss the indictment and his subsequent guilty plea to receiving and possessing a firearm with an obliterated serial number. On appeal, Gomez argues that the statute under which he was convicted, 18 U.S.C. § 922(k), is rendered facially unconstitutional by the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

We reject Gomez's challenge. Section 922(k) is facially constitutional. It provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k). Section 922(k) does not infringe upon the right to

bear arms because (i) no person is thereby prevented from possessing any type of firearm, and (ii) a firearm with a removed, obliterated, or altered serial number is not a weapon in common use for lawful purposes. Accordingly, we affirm the judgment of conviction.

## I

"[T]he Second Amendment confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). However, the Second Amendment does not confer the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. An "important limitation on the right to keep and carry arms" is "that the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). The right also does not "protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625. "Stated differently, the Second Amendment protects the right to keep and bear the sorts of weapons that are in common use—a limitation that

is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Antonyuk v. James*, 120 F.4th 941, 961 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900 (2025) (alterations adopted) (internal citation and quotations omitted).

Following *Heller*, this Circuit, as well as every other regional circuit, employed a two-part test to assess Second Amendment challenges that combined history with means-end scrutiny. *E.g.*, *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 118 (2d Cir. 2020). The Supreme Court resoundingly rejected that framework in *Bruen* and set out a new "test rooted in the Second Amendment's text, as informed by history." 597 U.S. at 17, 19. *Bruen* instructs: "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24.

*Bruen* considered New York State's proper-cause requirement

under which, before obtaining a license to carry a firearm outside the home for self-defense, applicants had to "demonstrate a special need for self-protection distinguishable from that of the general community." *Id.* at 12 (internal citation and quotations omitted). The Court struck it down, holding in two steps (i) that the plain text of the Second Amendment protected the petitioners' right to carry handguns outside the home for self-defense and (ii) that New York failed to demonstrate that the proper-cause requirement was consistent with the Nation's historical tradition of firearm regulation. *Id.* at 32-33, 70. At the first step, the petitioners were ruled to be "ordinary, law-abiding, adult citizens" and "part of 'the people' whom the Second Amendment protects." *Id.* at 31-32 (quoting *Heller*, 554 U.S. at 580). They wished to carry handguns, which were also understood to be "weapons 'in common use' today for self-defense." *Id.* at 32 (quoting *Heller*, 554 U.S. at 627).

Nothing in *Bruen* casts doubt on the understanding of the Second Amendment's scope. *See id.* at 81 (Kavanaugh, *J.,*

6

concurring).   Instead, *Bruen* clarified the bounds of the Second Amendment as outlined in *Heller*.   *See id.* at 20 (discussing the textual elements of the Second Amendment's "operative clause"—whereby "the people" "keep and bear" "[a]rms"—all before moving to the historical inquiry).

Following *Bruen*, we have applied its holding—that law-abiding persons have a Second Amendment right to possess weapons that are in common use for self-defense—to various fact patterns. *See*, *e.g.*, *Antonyuk*, 120 F.4th at 981 (citing *Bruen*, 597 U.S. at 31–32). *Gazzola v. Hochul* invoked the presumptive lawfulness of "laws imposing conditions and qualifications on the commercial sale of arms."   88 F.4th 186, 195 (2d Cir. 2023) (quoting *Heller*, 554 U.S. at 626-27), *cert. denied*, 144 S. Ct. 2659 (2024).   However, such "commercial regulations . . . cannot have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms."   *Id.* at 196.   The *Gazzola* court affirmed the district court's denial of preliminary injunctive relief from several New York commercial

7

regulations on firearm dealers that petitioners alleged would impose substantial costs on firearm dealers. *Id.* at 197-98. Nevertheless, the New York laws at issue were not "so restrictive that [they] threaten[ed] a citizen's right to acquire firearms." *Id.* at 196. "[G]un buyers have no right to have a gun store in a particular location, nor a right to travel no more than short distances to the most convenient gun store that provides what they deem a satisfactory retail experience." *Id.* at 197-98 (internal citation and quotations omitted). The minimal burden imposed by those regulations was insufficient to deprive New Yorkers of "relatively easy access to sellers of firearms." *Id.* at 198.

In *Antonyuk v. James*, this Court explained that the first step of the *Bruen* inquiry "requires courts to consider three issues" before undertaking a historical survey: "whether the conduct at issue is protected, whether the weapon concerned is 'in common use,' and whether the affected individuals are 'ordinary, law-abiding, adult citizens' and thus 'part of "the people" whom the Second

8

Amendment protects.'"   120 F.4th at 981 (quoting *Bruen*, 597 U.S. at

31-32).   Because we conclude below that Gomez's challenge fails at

the first step of the *Bruen* analysis, we decline to consider whether

§ 922(k) is justified by the government's evidence of historical laws

regulating the commercial sale of firearms, gunpowder, and

dangerous weapons.

## II

There is appellate jurisdiction over a judgment of conviction

pursuant to 28 U.S.C. § 1291.   This Court reviews preserved

"challenges to a statute's constitutionality *de novo*."   *United States v.*

*Desposito*, 704 F.3d 221, 229 (2d Cir. 2013).

*Bruen* and *Antonyuk* require us to consider whether the conduct

regulated by § 922(k) is covered by the "plain text of the [Second]

Amendment as historically understood."   *Antonyuk*, 120 F.4th at 968.

The answer to that question depends on how precisely to characterize

the conduct that is regulated.   Gomez argues that "the conduct

regulated by Section 922(k) is the keeping of arms."   Appellant Br. at

9

9. That characterizes the regulated conduct at too high a level of generality. Properly considered, § 922(k) regulates possession of a firearm *with an obliterated serial number*.

In *Bruen*, the Court considered the conduct at issue as "carrying handguns *publicly for self-defense*." 597 U.S. at 32 (emphasis added). Defining § 922(k)'s regulated conduct as mere possession is thus even broader than *Bruen*'s holding that "[t]he Second Amendment's plain text thus presumptively guarantees petitioners . . . a right to 'bear' arms *in public for self-defense*." *Id.* at 33 (emphasis added). Similarly, *Zherka v. Bondi* recently held that the conduct regulated by § 922(g)(1)—defined as possession of a weapon *by a convicted, non-violent felon*—fell within the plain text of the Second Amendment. *See* 140 F.4th 68, 76-77 (2d Cir. 2025). If bare possession of a firearm were enough to invoke the plain text of the Second Amendment, virtually every Second Amendment challenge would elide *Bruen* step one—rendering it largely superfluous.

Having determined that § 922(k) regulates the possession of a

firearm with an obliterated serial number, we turn to whether "the Second Amendment's plain text covers [that] conduct." *Antonyuk*, 120 F.4th at 981 (internal citation and quotations omitted). We conclude that it does not for two reasons: (A) the conduct at issue does not implicate the right to armed self-defense, *Bruen*, 597 U.S. at 29, and (B) the weapons at issue are not "weapons in common use today for self-defense," *id.* at 32 (internal citation and quotations omitted).

### III

**Self-Defense.** "[I]ndividual self-defense is the *central component* of the Second Amendment right." *Id.* at 29 (internal citation and quotations omitted). The constitutionality of § 922(k) therefore depends on whether prohibiting the possession of a firearm with a removed, obliterated, or altered serial number "burden[s] a law-abiding citizen's right to armed self-defense." *Id.* It does not. Section 922(k) merely regulates a nonfunctional feature: the serial number. A functionally identical firearm remains available: Gomez, who had not previously been convicted of a felony, *see* 18 U.S.C. §

11

922(g)(1), would be free to possess and carry a serialized firearm for self-defense, and his ability to protect himself is in no way impaired by the presence of a serial number.

Gomez argues that the availability of functionally identical firearms is immaterial, relying on *Heller*'s ruling that the availability of long guns was insufficient to allow a ban on handguns. Instead, Gomez infers that no burden is permissible unless the government proves that the restriction is consistent with a robust historical tradition of firearm regulation. We are not persuaded by Gomez's attempt to circumvent *Bruen*'s first step.

As the Supreme Court explained in *Heller*, long guns were not a sufficient alternative to handguns because substantial functional differences (size, weight, and accessibility) make handguns the superior self-defense weapon. 554 U.S. at 629 ("[T]he American people have considered the handgun to be the quintessential self-defense weapon."). In *Gazzola*, we considered regulations on the commercial sale of firearms that undoubtedly burdened a citizen's

ability to purchase firearms, but upheld the regulations because they did not "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." 88 F.4th at 196.

Unlike the challenger in *Heller*, Gomez would be free to purchase a functionally identical firearm that is far more common, easier to obtain, and provides identical self-defense protection. And like the challenged regulations in *Gazzola*, § 922(k) is not "so restrictive that it threatens a citizen's right to acquire firearms." *Id.* Some burden on the commercial sale of firearms is "presumptively lawful" and is acceptable so long as the regulation does not *meaningfully* infringe on the right to self-defense. *Heller*, 554 U.S. at 627 n.26.

## IV

**Common Use.** Handguns have long been considered a "quintessential self-defense weapon." *Id.* at 629. But *Heller* instructs us that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful

13

purposes, such as short-barreled shotguns." *Id.* at 625 (discussing *Miller*, 307 U.S. at 179). A firearm with a removed, obliterated, or altered serial number is not a weapon in common use for lawful purposes. The Fourth Circuit—the only other circuit to decide a § 922(k) challenge in a published opinion post-*Bruen*—came to the same conclusion. *See United States v. Price*, 111 F.4th 392, 397 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1891 (2025); *see also United States v. Lopez*, No. 22-13036, 2024 WL 2032792, at *3 (11th Cir. May 7, 2024) (per curiam) (rejecting a constitutional challenge to § 922(k) on plain-error review). "[T]here is 'no compelling reason why a law-abiding citizen' would use a firearm with an obliterated serial number." *Price*, 111 F.4th at 406 (quoting *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010), *overruled on other grounds by Bruen*, 597 U.S. 1).

All available evidence reflects "that such weapons would be preferable only to those seeking to use them for illicit activities." *Id.*; *see* David M. Kennedy, Anne M. Piehl & Anthony A. Braga, *Youth Violence in Boston: Gun Markets, Serious Youth Offenders, and a Use-*

14

*Reduction Strategy*, 59 L. & Contemp. Probs. 147, 174-75 (1996) (observing that the only reasons to obliterate a serial number are to avoid connection with a firearm that was stolen, involved in a crime, or gained via a straw purchase). So the burden of "conceiv[ing] of a lawful purpose" for possessing these firearms "will almost always fall only on those intending to engage in illicit behavior." *Marzzarella*, 614 F.3d at 99. Gomez has presented no non-speculative evidence that law-abiding citizens use firearms with obliterated serial numbers for lawful purposes. Section 922(k), which thus regulates the possession of "weapons not typically possessed by law-abiding citizens for lawful purposes," is not proscribed by the Second Amendment. *Antonyuk*, 120 F.4th at 961 (internal citation and quotations omitted).

## V

**Facial Challenge.** Finally, Gomez's facial challenge fails. To mount a successful facial challenge to § 922(k), a litigant "must establish that no set of circumstances exists under which the law

15

would be valid, or show that the law lacks a plainly legitimate sweep." *Id.* at 983 (alterations adopted) (internal citation and quotations omitted). "Facial challenges are disfavored because they often rest on speculation, raise the risk of premature interpretation of statutes on the basis of factually barebones records, and threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 987 (internal quotations omitted) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008)). Gomez makes no attempt to show that § 922(k) is unconstitutional as applied to conduct other than his own. For that reason alone, his facial challenge must be dismissed.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction.